FRANCIS M. ATWOOD AND ELLEN ATWOOD v. GEORGE E. CANRIKE AND EUNICE CANRIKE.

*Boundaries—Evidence—Deed—Surveys—Adverse possession.*

1. An objection to a deed on the ground that it purports to convey 42 acres of land, described by metes and bounds, being more than the grantor is shown to have owned at the time of its execution, is untenable, it being admitted that the grantor then owned 40 acres of the land.

2. Where in describing land reference is had to a highway as one of the boundaries, the presumption is that the description

refers to the highway as it existed upon the ground at the time the deed was executed, and not to the line as shown by the record of its survey in the proper office.

3. In such a case the record is admissible, but becomes immaterial in the absence of proof that the road had been opened or was in use on the recorded line at the time the deed was made, or proof that no such highway as is referred to in the deed was then open or in use.

4. It is proper for a surveyor who testifies to running out lines for the purpose of settling a disputed boundary to present a plat of his survey, which is admissible in evidence, and, if inaccurate, such fact may be shown by the opposite party, and the question of its correctness is for the jury.

5. Adverse possession is evidenced by the manner of the holding of the occupant, and not by the opinion of the neighborhood.

So *held*, where a boundary line was established by the action of one of the land-owners in erecting a fence where he claimed it should run, which action was concurred in by the other, and adverse possession was thereafter maintained for the statutory period in reliance upon such action, which was sought to be defeated by evidence that it was a matter of common repute in the neighborhood that the fence was not on the true line; the admission of which evidence is held to have been error.

Error to Branch. (Buck, J., presiding.) Argued April 15, 1891. Decided May 15, 1891.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion.

*H. H. Barlow,* for appellants, contended:

1. The record of a road cannot be used to establish the existence of a road itself without prior evidence of its use; citing *Merrill v. Kalamazoo,* 35 Mich. 211.

2. Evidence that it was generally reputed in the neighborhood that the line was in dispute was inadmissible; citing 1 Whart. Ev. § 185 *et seq.*

*Henry C. Loveridge (Charles N. Legg,* of counsel), for plaintiffs, contended:

1. In support of admission of deed from Caroline Lusk of 42 acres, etc., counsel cited *Covert v. Morrison,* 49 Mich. 133.

2. "Maps and plats are admissible, when referred to in deeds, as original evidence, and they are also admissible to exhibit the present visible condition of the premises in controversy, and to explain, illustrate, and apply testimony. In actions of ejectment, and other actions relating to real estate, and in many other cases, maps are made for use at the trial, and are constantly used at the circuit, and, in most cases, are quite useful, if not indispensable, to enable courts and juries to comprehend readily the questions in dispute. In such cases, when proved to be correct by the surveyor or engineer by whom they are made, they are received in evidence, in connection with the testimony of witnesses, substantially as part of their testimony, and are clearly admissible as explanatory of such testimony. They are received for the consideration of the jury, so far as they are shown to be correct, in connection with other evidence, and to enable them to understand and apply such evidence, and not as independent evidence;" citing *Curtiss v. Ayrault*, 3 Hun, 490; *Johnston v. Jones*, 1 Black, 216.

3. In support of claim that reputation is admissible to prove private boundaries, counsel cited *Kinney v. Farnsworth*, 17 Conn. 355, 356; *Nieman v. Ward*, 1 Watts & S. 68; *Shepherd v. Thompson*, 4 N. H. 213; *Great Falls Co. v. Worster*, 15 Id. 412; *Smith v. Powers*, Id. 546, 564; *Jones v. Pashby*, 62 Mich. 622.

MORSE, J. This is an action of ejectment. The premises of the parties adjoin, and the boundary line between their respective lands is the dispute.

George Strong and wife were the common grantors of the premises owned by plaintiffs and defendants. The first deed was from Strong and wife to Caroline Lusk, dated November 16, 1844, conveying a piece of land situated in the township of Union, in Branch county, Mich., and bounded on the north by the county line between Branch and Calhoun counties, on the west by the west line of Union township, on the south by the center of the State road leading westerly from Union City, and on the east "by the north and south line far enough east to include 40 acres of land within said boundary; said land being the north-west quarter of section 6." This N.

W. $\frac{1}{4}$ was a fractional one, and the trouble has arisen from a dispute as to the location of the State road.

The deed to Caroline Lusk only called for 40 acres, but in 1865 she deeded to one John D. Merritt, bounding the premises conveyed as follows:

"Commencing at center of *highway* running from Union City to Sherwood, where it crosses the west line of Union township; running thence north, along the west line of said township, to the north line of the same; thence east, along the north line of said township, far enough to make 42 acres; thence south to the center of the highway; thence west, along the center of said highway, to the place of beginning."

Merritt conveyed the same description to Albert Losey, March 30, 1867; and Losey deeded to Elias Atwood, August 12, 1871, describing the premises as that part of the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 6, township of Union, lying north of the highway leading from Union City to Sherwood. The same description was conveyed by Elias Atwood to Francis M. Atwood, August 12, 1881. At the time Strong deeded to Caroline Lusk, he owned the whole of the N. W. $\frac{1}{4}$ of section 6, and Atwood now also owns the S. $\frac{1}{2}$ of said quarter.

Defendants claimed under a deed from Strong dated November 14, 1849, conveying to Charles Wilkes the N. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 6 (Union township), containing 40 acres of land, more or less, according to the United States survey. Wilkes deeded to Corbin, May 14, 1857; Corbin to Gould, August 3, 1874; Gould to McCreery, August 28, 1874; McCreery to George Canrike, May 2, 1889.

The defendants also claim the strip of land in controversy by adverse possession for over 20 years.

The deed from Caroline Lusk to Merritt was objected to on the ground that it purported to convey more land

than was shown in the grantor of such deed at the time it was made. This objection was not good. The deed, at the least, was evidence to show the conveyance of 40 acres, to which it is admitted Mrs. Lusk had good title at the time the deed was made.

The plaintiffs, to maintain their claim, offered the record of a State road known as the "Washtenaw Territorial Road," purporting to have been laid out and surveyed in June, 1834, and gave testimony tending to show that, taking the center line of this road, as surveyed and recorded, as the south boundary line of the lands described in the deed from Strong to Lusk, the boundary line between themselves and the defendant Canrike would be as claimed by them, and they would be entitled to recover. There was no testimony given showing that the line of the road as recorded was ever opened or traveled, and the defendants' counsel objected to the admission of the record upon this ground. It was also conceded on the trial that if the State road, when the deed from Strong to Lusk was made, ran where it now runs, the plaintiffs have their full 40 acres of land, and were not entitled to recover.

I am of the opinion that this record of the State road was admissible. But without proof that the line of the road, as shown by the record, had been opened or used at the time the deed was made, or proof that no road called a "State road" had been opened or used, from Union City westerly across this quarter section, the record would not be material, as the presumption would be, in case any road called a "State road" running from Union City westerly across the land was in use, that the description in the deed referred to the highway as it existed upon the ground, and not to the line in the record in the clerk's office. The testimony upon this matter was

not very certain or satisfactory, but we think there was enough to warrant the admission and retention of this record in the case.

The plat made by one Bennett, showing, among other things, the present location of the highway, and where it would have been located provided it had run upon the surveyed line, shown by the record in the clerk's office, was admissible in evidence. It is claimed that the plat was not accurate, and that imaginary lines were run upon it, and the jury were misled by it. But it was proper for Bennett, who was a surveyor, to give evidence that he had run out these lines, and to present a plat of his survey. If inaccurate, such inaccuracy could be shown by the defense, and the question of its correctness was for the jury.

The testimony of the defendant tended most strongly to show that he and his grantors had been in adverse and hostile possession of the disputed strip of land for over 15 years. In 1874, when Elias Atwood owned the land upon the west and McCreery upon the east, a survey was had, and Atwood himself built the fence where he wanted the line, not being satisfied with the line shown by such survey. Such survey brought the line nearly on the previous line between the lands before Elias Atwood purchased lands now owned by plaintiffs. This line, so established by Elias Atwood, has remained the division line between the premises without change thereafter. An orchard was set out upon the lands owned now by defendants, in 1870 or 1871, by Corbin, whose wife then owned them. The boundary line claimed by plaintiffs would take in two or three rows of these apple trees.

It is difficult to perceive how the jury, under the whole

evidence, could find against the claim of adverse possession upon the part of the defendants, as the charge of the court was a very fair one, and stated clearly the law as to adverse possession, unless they were influenced by testimony admitted, upon the cross-examination of defendants' witnesses, against objection, that it was a matter of common repute in the neighborhood that the fence was not on the true line. This testimony was erroneously admitted. Whether the fence was on the true line or not could make no difference in the right of the defendants to hold this strip by adverse possession.

It would appear from all the testimony that the line settled upon by Elias Atwood was substantially the old line existing when Corbin set out the orchard, in 1870 or 1871. If this line, so settled by Elias Atwood where he wanted it, with the concurrence of McCreery, as McCreery testifies, has ever since been maintained by McCreery and his grantees under a claim that it was the line, and the possession of the land under such claim has been open, notorious, continuous, hostile, and adverse, as against the plaintiffs and their grantors, the fact that it was a matter of common repute in the neighborhood that the fence was not on the true line was entirely immaterial. The boundary line in such a case is not established by common repute, but by the action of the land-owners between whose lands the boundary is sought to be established. Nor would this common repute have any bearing upon the character of the occupancy of the parties, as affecting the question of adverse possession. The adverse possession is evidenced by the manner of the holding of the occupant, and not by the opinion of the neighborhood.

The judgment is reversed, and a new trial granted, with costs of this Court to the defendants.

McGRATH, LONG, and GRANT, JJ., concurred with MORSE, J.

CHAMPLIN, C. J. I concur in the result, upon the ground that the line was agreed upon between the owners.